# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. BOBBY BROWN

Direct Appeal from the Circuit Court for Tipton County
No. 3458    Joseph H. Walker, Judge

---

No. W1999-00298-CCA-R3-CD - Decided May 30, 2000

---

The Defendant was indicted for one count of aggravated robbery and one count of theft over $1,000. He was subsequently tried by a Tipton County jury and found guilty of aggravated robbery and theft over $500. In this appeal, the Defendant argues that the trial court erred by allowing introduction of an involuntary statement which he made to police following his arrest, by failing to grant his motion for new trial on the basis of insufficient evidence, and by sentencing him incorrectly. We hold that the trial court did not err by admitting the Defendant's statement to police, that the evidence was sufficient to support the Defendant's conviction, and that the Defendant was properly sentenced. Accordingly, we affirm the judgment of the trial court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed.

WELLES, J., delivered the opinion of the court, in which HAYES, J., and GLENN, J., joined.

Jason G. Whitworth, Covington, Tennessee, for the appellant, Bobby L. Brown.

Paul G. Summers, Attorney General, Mark E. Davidson, Assistant Attorney General, Elizabeth Rice, District Attorney General, James W. Freeland, Jr., Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

The Tipton County Grand Jury indicted the Defendant, Bobby Brown, for one count of aggravated robbery and one count of theft over $1,000. Following a trial conducted on November 4, 1998, a Tipton County jury convicted the Defendant of aggravated robbery and theft over $500. The trial court sentenced the Defendant as a Range II multiple offender to seventeen years incarceration for the aggravated robbery and three years incarceration for the theft; the trial court ordered that the sentences be served concurrently. Pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, the Defendant now appeals both his conviction and his sentence. He presents three issues for our review: (1) whether the trial court erred by denying his motion for new trial, in which he argued that the police induced him to confess by offering him money to retrieve weapons from the crime; (2) whether the evidence introduced at trial was sufficient to support his convictions; and (3) whether he was properly sentenced. We affirm the decision of the trial court.

Kathryn Martin testified that she was working at the Corner Liquor Store in Covington on October 22, 1997. She recalled that at approximately 9:00 p.m., a man walked into the store and pointed a pistol at her. She told him, "Don't hurt me," and he demanded that she open the cash register. After she complied, he told her to lie on the floor. He removed money from the register and took a gun which was kept beneath the counter. He then removed the phone from the wall and hit Martin on the back with the credit card machine before departing. Fearful, Martin remained on the floor for a few minutes; she then summoned help.

Martin testified that the average amount of money in the store's cash register at the end of each day was approximately $600 or $700. She estimated the amount taken on the night of the robbery as "anywhere from $500 or $600 or more." She described the perpetrator of the crime as a "skinny guy" between five feet, eight inches and six feet tall, but she could not further identify him because "all [she saw] of the guy was his nose part." Martin could not say that the Defendant was not the perpetrator, but she stated that she did not remember ever seeing the Defendant prior to trial, either inside or outside of the store.

Thomas Bryant, the owner of the Corner Liquor Store, testified that he was summoned to the store by police on the night of the robbery. He informed police that $650 had been taken from the cash register. He also reported that a Smith & Wesson .357 magnum handgun worth approximately $500 had been stolen from his store.

Investigator Ricky Chandler of the Covington Police Department testified that he investigated the armed robbery of the Corner Liquor Store which took place on October 22, 1997. He stated that he obtained a description of the perpetrator as part of his investigation and reported that the description did not fit the Defendant. However, he stated that a few days after the crime, he and Captain Carver, also of the Covington Police Department, were contacted by the Defendant and a man named Frank Smith, Jr. According to Chandler, the Defendant identified Kenneth Adams as the perpetrator of the crime and offered to recover the two weapons involved in the crime, the handgun used by the perpetrator and the one stolen from the store, in exchange for money from the police department. The Defendant requested $500 for each of the weapons.

Chandler testified that although the Defendant was not helpful to the police in apprehending Kenneth Adams, he did provide the police with both weapons used in the crime. Chandler stated that the Defendant was initially paid $500 for recovery of the weapons, with an additional $500 due on receipt, which was never paid. Chandler reported that the Defendant was paid an additional $200 for recovery of weapons taken in an unrelated case; however, the Defendant subsequently relinquished the $200 when "[t]hat fell through."

Chandler maintained that the Defendant was not a suspect for the crime at the time he provided the police with the guns. He stated that the guns were recovered on October 29, 1997 and that Adams was arrested and charged with the crime during the first or second week of November 1997. After Adams' arrest, the police targeted the Defendant and Frank Smith, Jr., as suspects based

on information provided by Adams. Chandler reported that Adams supplied the police with a motel receipt for a room registered to the Defendant on the day of the robbery.

Chandler also introduced the following written statement from the Defendant which was taken by police after the Defendant's arrest:

> Kenny Adams came to me talking about being broke, homeless, and I told him I was in the same shape. We came uptown, met Frank Smith, Jr. On the way uptown Kenny had talked about robbing the beauty shop on 51 at Spring. Told him it wasn't worth it.
>
> I parked the van uptown on North Main, and I went into the club to ask Charlie Ed for some cigarette money. Frank came running in and told me to come on, and I got in the van and we picked up Kenny running down the street. He said, 'I done it' and pulled out a big gun and some cash.
>
> All I thought about was getting high. We went to Memphis to a motel and smoked up the money.

Chandler explained that the Defendant meant that he, Adams, and Smith had used money from the robbery to buy crack cocaine. Chandler also stated that the van which the Defendant mentioned in his statement was owned by another party but had been driven by the Defendant for about three years prior to the crime. In addition, he reported that at the time of the crime, the Defendant's driver's license had been revoked.

Terry Rials, manager of a Memphis area Comfort Inn, introduced into evidence a copy of the "check-in" for one of the rooms at his motel. The room was registered to the Defendant. According to the receipt, the Defendant checked into the room on October 22, 1997 and checked out on October 23, 1997. He paid for the room in cash.

Kenneth Adams, who was incarcerated at the time of trial for the aggravated robbery and theft over $1,000 of the Corner Liquor Store, was questioned about a statement he made to police concerning the events of October 22, 1997. At trial, he maintained that the statement he had previously given to police was truthful. He verified that he told Investigator Chandler, "[t]he night I robbed the liquor store, [the Defendant] sent Frank [Smith, Jr.,] to see if they had a camera, and Frank came back and said no." Adams recalled that he had provided the same testimony at his guilty plea hearing. He claimed that the Defendant knew about the robbery before it happened and that he, Smith, and the Defendant all worked together to rob the store. He claimed that the three of them decided to rob the store and sat together in the van before the crime to discuss what would happen. In addition, Adams maintained that he, Smith, and the Defendant checked into a Comfort Inn in Memphis following the crime, where they "smoked . . . dope" which had been bought with proceeds of the crime.

Frank Smith, Jr., was called to testify for the defense. After being advised of his rights, he opted to invoke his Fifth Amendment privilege in response to questions concerning the Defendant's involvement in the robbery. However, after continued questioning, he admitted that he remembered

a telephone conversation with counsel for the Defendant during which he stated that he and the Defendant did not participate in planning the robbery. When asked whether this was true, he responded, "can't no grown man put another grown man up to do nothing. . . . He do it on his own," and then invoked his Fifth Amendment privilege. On cross-examination, Smith admitted that he had been previously convicted of two separate counts of theft over $500.

The Defendant testified on his own behalf and denied involvement in planning or assisting in the robbery. He described the events of October 22, 1997 as follows: On the night before the robbery, Adams contacted him, looking for a place to stay. He allowed Adams to spend the night in his van, and the next morning they drove to Memphis to look for jobs together. Adams found a job that day, and on the way home to Covington, Adams began to tell the Defendant "he needed a ride to get to that job, and how broke he was and how bad he was doing."

After their conversation, the Defendant decided that he needed to borrow some "cigarettes money," and he proceeded to a bar in Covington, where one of his friends worked, to borrow the money. Adams noticed a beauty salon on the way and told the Defendant that he was going to rob it. The Defendant responded, "Kenny, man, it ain't worth it."

When they arrived in Covington, they encountered Smith, who approached the van on foot. The Defendant parked the van and got out, leaving Adams inside the van. He told Smith that Adams was considering robbing the beauty salon and that they needed to "get rid" of Adams. The Defendant went into the bar where his friend worked and remained there for thirty to forty minutes. Smith then entered the bar and said, "Come on . . . . Let's go, man. . . . Kenny done got out the van and he gone up toward the liquor store." They left the bar and got into the van. As they drove toward the liquor store, they encountered Adams, who was running down the street. Adams got into the van, and the Defendant then saw the stolen cash and a gun.

After Adams entered the van, the three men drove to Memphis together. The Defendant registered under his name at the Comfort Inn. He, Smith, and Adams used cocaine in the motel room. The Defendant admitted that he knew the cocaine had been bought with money from the robbery.

On cross-examination, the Defendant testified that Smith was driving his van at the time of the crime because the Defendant's driver's license had been revoked. He also admitted that he had been previously convicted of aggravated burglary and twice of the sale of cocaine. He explained that he was "addict[ed]" to drugs. He denied that he aided Adams in leaving the scene of the crime. When questioned about his decision to provide the police with guns from the crime, he explained, "I knew that I had done wrong . . . and I knew that this would come up." He said that at the time he contacted the police, he thought that he would be called as a State witness against Adams and that he would be offered a plea agreement in exchange for his testimony.

-4-

# I. DEFENDANT'S STATEMENT TO POLICE

The Defendant first argues that law enforcement officers induced him to involuntarily incriminate himself by offering him $1,000 to recover the weapons involved in this crime. He contends that the officers knew that he was a "crack addict" and that he was "unable to resist the temptation of being paid $1,000.00 to retrieve incriminating evidence." In his brief, he states, "Offering a crack addict $1,000.00 to incriminate himself amounts to physical and psychological coercion making the resulting production of evidence and statement involuntary and inadmissible." The Defendant insists that the actions of law enforcement officers violated his Fifth and Fourteenth Amendment rights and that the statement he made to police, which was later introduced at trial, was involuntary and therefore inadmissible. He thus contends that the trial court erred by denying his motion for new trial, in which he asserted this issue as a ground.

The Defendant approached police shortly after the crime in question, which occurred on October 22, 1997, and offered to provide them with weapons from the crime in exchange for money. On October 29, 1997, before he was targeted as a suspect in the crime, the Defendant delivered the handguns to police. After the police arrested Kenneth Adams in early November, the police then arrested the Defendant. He was advised of his Miranda rights and then made the statement at issue on November 19, 1997.

"[I]n order for a confession to be admissible, it must be 'free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence . . . .'" State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996) (quoting Bram v. United States, 168 U.S. 532 (1897)). "It is the duty of the trial judge to determine the voluntariness and the admissibility of a defendant's pre-trial statement." State v. Burns, 979 S.W.2d 276, 289 (Tenn. Crim. App. 1998). The trial court's determination that a confession was given knowingly and voluntarily is conclusive unless the evidence preponderates against the trial court's ruling. Id.

Apparently, the Defendant argues that his statement to police was not voluntary because of his addiction to drugs. The fact that he may have been motivated to receive money from police to buy drugs does not render his subsequent statement involuntary. Rather, he made an offer to police to exchange money for weapons, and the police took him up on his offer. The Defendant was later arrested in connection with this crime and informed of his rights. He then opted to make a statement to police concerning his involvement in the crime. We find no evidence of coercion of any kind in the record before us. We conclude that the Defendant's statement to police was voluntary and therefore that it was properly admitted at trial. This issue has no merit.

## II. SUFFICIENCY OF THE EVIDENCE

The Defendant next argues that the evidence presented at trial was insufficient to support his conviction. He states, "The only evidence tending to connect the Defendant . . . to the robbery was the uncorroborated testimony of his Co-Defendant, Kenny Adams." He contends that Adams'

testimony was not only uncorroborated, but was also unreliable and lacking in credibility. He argues that the trial court erred by overruling his motion for new trial "since the verdict is against the weight of the evidence and was based upon the uncorroborated testimony of an accomplice."

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

In addition, our supreme court has held "that in Tennessee a conviction may not be based upon the uncorroborated testimony of an accomplice." State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). The court has explained the extent to which accomplice testimony must be corroborated as follows:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

Id. at 803-804 (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). The supreme court has also indicated that the question of whether a witness' testimony has been sufficiently corroborated is a factual matter which should be resolved by the jury. Id. at 803.

Contrary to the Defendant's contentions, Kenneth Adams' testimony was not the only evidence presented at trial linking the Defendant to the crime. To corroborate Adams' testimony, the State presented a motel receipt showing that the Defendant registered for a room at a motel on the day of the crime, as Adams indicated, and paid for the room in cash. In addition, Officer Chandler testified that the Defendant supplied the police with both weapons involved in the crime, and the owner of the liquor store verified that one of the guns provided by the Defendant was the same gun that had been stolen from his store. Finally, the Defendant himself admitted that he was with Adams before and after the robbery, that he knew Adams intended to commit a robbery, that Adams entered his van immediately after the crime, that he drove with Adams and Smith to a motel room in Memphis following the crime, that he registered for the room under his own name, and that the three men then smoked crack cocaine bought with the proceeds of the robbery. We conclude that this is clearly sufficient evidence from which the jury could have adduced the Defendant's guilt. Although the Defendant denied involvement in the actual robbery, questions concerning credibility of the witnesses are entrusted to the jury. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn.1984). Having heard all evidence in this case, including the conflicting testimony of Adams and the Defendant, the jury apparently rejected the Defendant's testimony. We will not disturb this finding on appeal. We therefore conclude that sufficient evidence was presented at trial to support the jury's finding of guilt.

## III. SENTENCING

Finally, the Defendant argues that he was improperly sentenced. He complains that the trial court failed to apply appropriate mitigating factors, and he requests a reduction of his sentence. The Defendant suggests that the following mitigating factors should have been applied in his case: "(1) the Defendant's conduct neither caused nor threatened bodily injury; (2) the Defendant acted under strong provocation of addictive drugs; (3) the Defendant played a minor role in commission of the offense; (4) the Defendant was suffering from mental or physical condition that significantly reduced his culpability for the offense; (5) the Defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons; (6) the Defendant assisted authorities in locating or recovering property involved in the crime; (7) the Defendant lacked a sustained intent to violate the law motived by criminal conduct; and (8) the Defendant acted under duress or domination of another person." See generally Tenn. Code Ann. § 40-35-113.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the

criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the sentencing hearing, the trial judge considered the sentencing principles and relevant circumstances. We therefore conclude that our review is de novo with a presumption of correctness. In sentencing the Defendant, the trial judge considered the Defendant's prior criminal record and found him to be a multiple offender. See Tenn. Code Ann. § 40-35-106. He applied one enhancement factor, that the "defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," id. § 40-35-114(1), and no mitigating factors. He ordered that the Defendant's two present convictions run concurrently. In addition, because the Defendant committed a separate offense while out on bond for the offense in this case, the trial judge ordered that the sentences in this case run consecutive to the sentence imposed for the conviction the Defendant received while out on bond. The trial judge further found that "the severity of the sentence is reasonably related to the severity of the offenses committed and that it serves to protect the public from further criminal acts by a defendant who had resorted to aggravated criminal conduct in this aggravated robbery and has a history of criminal conduct going back to convictions in this court in 1991." Finally, the trial judge noted that the Defendant was ineligible for alternative sentencing.

The Defendant's presentence report reveals that the Defendant has a lengthy prior record, which includes convictions for such offenses as aggravated burglary, theft of property, aggravated assault, and grand larceny, in addition to a number of drug-related offenses. Furthermore, at the sentencing hearing, the Defendant admitted that he had been convicted of reckless endangerment involving a deadly weapon while on bond for the offense in this case. We are satisfied that the Defendant's prior record and apparent lack of amenability to rehabilitation justifies imposition of an effective seventeen-year sentence in this case. Having carefully considered the record in this case, we further find that the trial court did not err by failing to apply mitigating factors suggested by the Defendant and conclude that the sentence imposed in this case is appropriate.

The judgment of the trial court is accordingly affirmed.